IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BERNETTA LASHAY WILLIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09cv930-MEF |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a *pro se* motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255.

## I.   BACKGROUND

On March 30, 2007, a jury found the petitioner, Bernetta Lashay Willis ("Willis"),

guilty of conspiring to defraud the United States (18 U.S.C. § 371) and multiple counts of

theft of government property and filing false claims (18 U.S.C. §§ 641 & 287) for submitting

fraudulent applications for Federal Emergency Management Agency ("FEMA") aid.[1]   The

jury also found Willis guilty of aggravated identity theft (18 U.S.C. § 1028A(a)(1)),[2]

threatening a federal witness (18 U.S.C. § 1512(a)(2)(A)), brandishing a firearm during a

---

[1]Willis participated in a scheme by which she, or others at her direction, submitted fraudulent applications for federal monies made available through FEMA to victims of Hurricane Katrina. Seven of Willis's coconspirators testified against her at trial and claimed that she was the mastermind behind the false-claims scheme.  Evidence established that Willis filed, herself or through others, 17 fraudulent FEMA claims and that when Willis directed coconspirators to apply for FEMA funds, she typically demanded a cut of, and sometimes all of, the money awarded.

[2]Willis was acquitted of four other aggravated identity-theft charges.

crime of violence (18 U.S.C. § 924(c)(1)(A)(ii)), distributing marijuana (21 U.S.C. § 841(a)(1)), possessing a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)(A)), and making false statements to a United States Marshal (18 U.S.C. § 1001(a)(2)).  A sentencing hearing was held on January 9, 2008, after which the district court sentenced Willis to a total of 516 months (43 years) in prison.

Willis appealed to the Eleventh Circuit, and on March 3, 2009, the appellate court affirmed the district court's judgment.[3]  Willis did not seek certiorari review by the Supreme Court.

On September 15, 2009, Willis filed this 28 U.S.C. § 2255 motion asserting the following claims:

1.   Trial counsel Valerie Smedley rendered ineffective assistance in the following ways:

   a.   She failed to enter only a limited appearance on Willis's behalf, which caused appointed trial counsel Timothy C. Halstrom to be removed from the case.

   b.   After her appearance as counsel, she failed to discuss the case with prior counsel Halstrom or to prepare the case for trial.

   c.   She failed to discuss the case with Willis and to prepare Willis for trial.

_____

[3]*See United States v. Willis*, 560 F.3d 1246 (11th Cir. 2009).  On appeal, Willis argued that (1) the district court erred in its calculation of the intended loss from her offense; (2) the district court's denial of her motion for a sentencing variance was unreasonable; and (3) her ultimate sentence was unreasonable.

2

d.   She failed to present evidence that Willis asked her to present at trial.

e.   She failed to interview and call favorable witnesses to testify at trial.

f.   She failed to question witnesses as requested by Willis during the course of the trial.

g.   She stipulated to elements of the offense without Willis's permission.

h.   She failed to object to "objectionable issues" during the course of the trial.

2.   Attorney Timothy C. Halstrom rendered ineffective assistance of counsel in the following ways:

a.   He failed to object to the court's denial of attorney Valerie Smedley's motion to withdraw as Willis's trial counsel.

b.   He failed to fully recognize Willis's diminished capacity "until it was too late in the proceedings."

Doc. No. 1 at 4-6.[4]

Willis later amended her § 2255 motion to add the following claims:

1.   Attorney Valerie Smedley rendered ineffective assistance of counsel in the following ways:

a.   She failed to file a motion for discovery.

b.   She failed to move to disqualify Assistant United

---

[4]Unless otherwise indicated, references to document numbers are to those assigned by the Clerk to pleadings docketed in the instant § 2255 action.  Page references in the pleadings are to those assigned by CM/ECF.  Citations to the trial transcript ("Trial Tr.") or certain other proceedings in the trial court refer to the record in *United States v. Willis*, Criminal Case No. 2:06cr71-MEF.

3

States Attorney Susan Redmond from the case.

2.    Attorney Timothy C. Halstrom rendered ineffective assistance of counsel by failing to assert the following issues on appeal:

    a.    The district court erred in its calculation of the intended loss from Willis's offense.

    b.    The order of the firearm counts was incorrectly listed in the Presentence Investigation Report ("PSI").

    c.    There was insufficient evidence to sustain the 18 U.S.C. § 924(c) conviction for possessing a firearm in furtherance of a drug trafficking crime

    d.    The Probation Office failed to prepare a sentencing guidelines calculation to assist counsel in efforts to better advise Willis of her estimated sentencing exposure.

Doc. No. 14 at 1-2.

The government argues that none of Willis's allegations of ineffective assistance of counsel are meritorious and that she therefore is not entitled to collateral relief through her § 2255 motion.  Doc. Nos. 10 & 21.  Willis was afforded an opportunity to respond to the government's submissions and has done so.  Doc. Nos. 12 & 26.  After due consideration of the § 2255 motion as amended, the submissions supporting and opposing the motion, and the record in this case, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II.   DISCUSSION

### A.   *General Standard of Review*

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are extremely limited.  A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice").  The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged

constitutional violation "has probably resulted in the conviction of one who is actually innocent...."

### B.   Standard of Review for Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Grossman v. McDonough*, 466 F.3d 1325, 1344 (11th Cir. 2006). Under *Strickland*'s two-part test, a petitioner must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (internal quotation marks omitted); *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id.* (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id.*

As noted above, under the prejudice component of *Strickland*, a petitioner must show

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998). A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of

7

effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### C.   Willis's Claims Against Smedley

### 1.   Smedley's Failure to Enter Limited Appearance

Willis contends that her trial counsel, Valerie Smedley, rendered ineffective assistance when she failed to enter only a limited notice of appearance on Willis's behalf.  Doc. No. 1 at 4.  According to Willis, Smedley was retained for the sole purpose of representing her at a pretrial detention hearing in an effort to obtain a bond for her.  *Id*.  Willis maintains that Smedley instead filed a general appearance on her behalf, which caused her previous counsel, Timothy C. Halstrom, "who had throughly investigated the case," to be removed from the case.  *Id*.  Willis alleges that once Smedley was paid a $500 fee for her work in the detention hearing, she "failed to put further time into the preparation of [Willis's] case for trial because there was no more money to pay her."  *Id*.

In an affidavit filed with this court, Smedley addresses Willis's allegations as follows:

> Ms. Willis states in her motion that I was paid $500 for the sole purpose to obtain a bond.  During our initial meeting, Ms. Willis stated that she was dissatisfied with Attorney Halstrom because he was not able to get a bond; that he would not file for a detention hearing.  I filed a Notice of Appearance and motion for detention hearing in an effort to get a bond.  Ms. Willis never instructed me to file a "limited appearance" on her behalf.  She asked that I represent her.  When I quoted her a fee, she stated that it would not be a problem.  However, she refused to pay the balance.  She continued to state that she had money hidden and would tell Lucy Orum where it was so that I could be paid.  Her friend, Lucy Orum, attempted to pay what she could to satisfy the debt.

Doc. No. 8 at 1-2.

The record reflects that Halstrom was originally appointed to represent Willis in July 2006 pursuant to the Criminal Justice Act (CJA) and that he was the fourth attorney in succession to appear on Willis's behalf.[5]  *See* Criminal Case No. 2:06cr71-MEF, Doc. No. 48.  Smedley entered a notice of appearance as Willis's retained counsel on January 4, 2007, and four days later, on January 8, 2007, Halstrom filed a motion to withdraw as Willis's counsel, stating as cause that Willis had retained Smedley as her counsel.  *Id.*, Doc. Nos. 151 & 153.  Halstrom's motion to withdraw as counsel was granted on January 11, 2007.  *Id.*, Doc. No. 157.  Smedley filed a motion for a detention hearing on Willis's behalf on January 18, 2007, and a hearing was held on that motion on January 23, 2007.[6]  *Id.*, Doc. Nos. 168 & 170.  On January 24, 2007, the court ruled on the motion and ordered that Willis was to remain in the custody of the United States Marshal pending further proceedings.  *Id.*, Doc. No. 171.

The record further reflects that on February 22, 2007, Smedley filed a motion to withdraw as Willis's counsel, citing a breakdown in communication and lack of cooperation

---

[5]The record demonstrates that Willis had a pattern of disaccord with the  various attorneys who represented her at different times, and of refusing to accept the advice of legal counsel. Halstrom notes in the affidavit he filed with this court that, "[q]uite frankly, Ms. Willis was a very difficult client to work with."  Doc. No. 9 at 4.

[6]About eleven months earlier, in February 2006, a different retained counsel, attorney Bruce Maddox, represented Willis at a previous detention hearing, after which Willis was released on bond. *See* Criminal Case No. 2:06cr71-MEF, Doc. Nos. 15-17.  However, in November 2006, the court revoked Willis's bond upon finding probable cause to believe she harbored a fugitive during her release.  *Id.*, Doc. Nos. 123 & 125.

by Willis and her family members. *Id.*, Doc. No. 172. Nowhere in her motion to withdraw does Smedley suggest that she was representing Willis on only a limited basis. On February 28, 2007, after a hearing was held on the motion, the court denied Smedley's motion to withdraw as Willis's counsel. The transcript of the motion hearing reflects that neither Smedley nor Willis indicated to the court during the hearing that Smedley's representation of Willis was on a limited basis (i.e., limited only to the detention hearing). *Id.*, Doc. No. 297.

Attached to her affidavit filed in response to Willis's § 2255 claims, Smedley has submitted copies of receipts supporting her statement that Lucy Orum and other individuals made additional payments to her on Willis's behalf, evidently for the purpose of paying down the balance of Smedley's fee for representing Willis in the case. Doc. No. 8-1. In an affidavit he filed in response to Willis's claims, Halstrom avers that while he believes Willis's numerous changes in counsel ultimately worked to her detriment, Smedley's appearance as Willis's counsel was not, as Willis claims, on a limited basis. Doc. No. 9 at 1-3.

Willis appears to suggest that Smedley improperly usurped Halstrom's role as her counsel. However, Smedley entered a notice of appearance only after she was retained by Willis. Moreover, the court granted Halstrom's motion to withdraw as counsel and denied the motion to withdraw later filed by Smedley. As the government notes in its response to Willis's § 2255 motion, the concept of a "limited appearance" normally does not exist for

someone who is represented by CJA counsel, and if a defendant can afford to retain counsel, CJA counsel is no longer provided. *See* Doc. No. 10 at 11; citing 18 U.S.C. § 3006A(b) ("If at any time after the appointment of counsel the United States magistrate judge finds that the person is financially able to obtain counsel or make partial payment for the representation, it may terminate the appointment of counsel[.]"). The record does not support Willis's contention that Smedley's representation of her was meant to be – or should have been – limited to matters related to the January 2007 detention hearing. Nor has Willis demonstrated any specific prejudice arising from the mere fact that Smedley's representation of her was not on a limited basis. The court therefore concludes that Willis is not entitled to any relief based on her claim that Smedley rendered ineffective assistance of counsel by failing to enter only a limited appearance on her behalf.

### 2. Smedley's Failure to Discuss Case with Halstrom or Willis and Failure to Prepare for Trial

Willis also contends that after Smedley gave notice of appearance as her counsel, she failed to discuss the case with Willis's previous counsel, Halstrom, and also failed to discuss the case with Willis or to prepare Willis and the case for trial. Doc. No. 1 at 4.

With regard to these allegations, Smedley states in her affidavit:

> Ms. Willis states that I did not discuss her case with her previous counsel, Attorney Timothy Haistrom. I went to Attorney Halstrom's office to pick up Ms. Willis's file. While there, we discussed her case. Even after my visit, Mr. Halstrom provided my office with some additional information.
>
> Ms. Willis states that I failed to discuss her case with her. On several occasions I met with Ms. Willis to discuss her case. We reviewed the

discovery several times.  We discussed in detail photographs that were taken of her home on her defense to the charge that she could have made applications from her personal computer.  The personal computer was never seized.

....

Ms. Willis has made several allegations regarding the trial of her case. Prior to her trial, I made arrangements to have several of the counts dismissed. The proposed plea agreement was discussed with Ms. Willis.  However, she refused to accept the Government's offer based upon the fact that she would be pleading to counts that she continued to state that she was not guilty [of].

After Ms. Willis rejected the Government's plea offer, I again discussed the trial of her case and the worst case scenario regarding sentencing.  She again refused the offer.  I advised her that based upon the facts of the case and the limited evidence we had, it was not in her best interest to proceed with trial.  I put this information on the record before Judge Fuller before starting jury selection.  Further, I had Ms. Willis sign a statement to this effect.

Doc. No. 8 at 2-3.

In his own affidavit filed with this court, Halstrom confirms that after Smedley was retained by Willis, he met with Smedley at his office, where he provided her with his files and briefed her on Willis's case.  Doc. No. 9 at 3.  The record reflects that Halstrom later provided Smedley with additional notes regarding Willis's case. *See* Doc. No. 8-2.  Smedley has submitted with her affidavit exhibits reflecting that she engaged in substantial plea negotiations on Willis's behalf.  Doc. Nos. 8-3 & 8-4.  Included are a draft of a lengthy written plea agreement – which Willis ultimately rejected – and an affidavit signed by Willis in which she acknowledges that she discussed her case with Smedley on more than one occasion; that Smedley fully explained her sentencing exposure if convicted; that she and Smedley met with the U.S. Attorney for a proffer session where a plea deal was discussed;

12

and that, against Smedley's advice, she had refused the government's plea offer and elected to go to trial.[7]  Doc. No. 8-3 at 1-17 & Doc. No. 8-4 at 1-2.

In light of the record evidence refuting Willis's conclusory allegations that Smedley failed to discuss the case with Halstrom and failed to discuss the case with her or to prepare her and her case for trial, and in the absence of any specific showing of prejudice,[8] this court concludes that Willis is not entitled to any relief based on these claims of ineffective

---

[7]Willis's signed affidavit provides as follows:

My name is Bernetta Willis.  I am over the age of nineteen (19) years and I am the defendant in the above-styled cause.

My attorney is Valerie Murry Smedley.  I have explained my involvement in this case regarding FEMA, possession of two (2) firearms, tampering with a government witness and possession of marijuana.  Attorney Smedley and I have discussed this matter and she has explained to me the possible punishment of approximately thirty (30) to thirty-five (35) years if I am found guilty of these charges.  Attorney Smedley met with the U.S. Government and arranged a plea agreement of nine (9) to fifteen (15) years.

During a scheduled proffer on or about March 21, Attorney Smedley and the Government explained a plea agreement of nine (9) years which could be reduced if I cooperated with the Government OR nine (9) to fifteen (15) years if I did not cooperate but would plea to the charges of FEMA, possession of one (1) firearm, tampering with a government witness and possession of marijuana.  During my last meeting with Attorney Smedley on or about March 22nd, Attorney Smedley again explained the Government's offer and I refused.

I am requesting that this matter go to trial.  I am making this request against the legal advice of my attorney.

Doc. No. 8-4 at 1-2.

[8]Willis asserts that Smedley failed to prepare the defense witnesses who testified at trial or to discuss their testimony with them prior to trial.  However, she fails to specify how she was prejudiced in this regard.

assistance of counsel.

### 3.    Smedley's Failure to File Discovery Motion

Willis asserts that Smedley rendered ineffective assistance of counsel by failing to file a motion for discovery. Doc. No. 14 at 2. Smedley addresses this claim as follows:

> Regarding the discovery in this case, I received the discovery from Attorney Halstrom, who was [Willis's] first attorney. He assured me that this was the entire discovery he received from the government. However, when he later located some other information that was a part of her case, he provided that information to me as well. I had no reason to believe Attorney Halstrom nor the government would withhold evidence regarding this case. Attorney Halstrom showed a sincere interest in assisting Ms. Willis.

Doc. No. 19 at 1-2. As noted by the government in its supplemental response, the court's arraignment orders required the government, consistent with the Court's Standing Order on Discovery,[9] to provide Willis's counsel with all discovery, and the government complied with this obligation throughout the case. Doc. No. 21 at 6-7. Under the circumstances, where Smedley was provided with discovery in the case, it was unnecessary for Smedley to file a motion for discovery. Because Willis demonstrates neither deficient performance in this regard by Smedley nor any resulting prejudice, she is not entitled to collateral relief based on this claim of ineffective assistance of counsel.

---

[9]The Standing Order on Criminal Discovery issued by the district court is intended to effectuate the policies underlying the discovery provisions of Fed.R.Crim.P. 16 and the Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Giglio*, 405 U.S. 150 (1972), by "promot[ing] the efficient exchange of discovery without altering the rights and obligations of the parties, but at the same time eliminating the practice of routinely filing perfunctory and duplicative discovery motions."

**4.      Smedley's Allegedly Deficient Performance at Trial**

Willis contends that Smedley rendered ineffective assistance of counsel during her trial by (1) failing to present evidence that Willis asked her to present; (2) failing to interview and call favorable witnesses to testify; (3) failing to question witnesses as requested by Willis; (4) stipulating, without Willis's consent, that Willis's primary residence was in Alabama and not Louisiana; and (5) failing to object to "objectionable issues."  Doc. No. 1 at 4.

As to Willis's allegations of deficient trial performance, Smedley states, in pertinent part:

> Regarding Ms. Willis's witnesses, she informed me of her witness to the incident that occurred at the Rose Supper Club wherein she brandished a weapon.  I interviewed the witness and prepared her for trial.  The witness was in fact called and testified favorably for Ms. Willis.  To the best of my recollection, there were no witnesses to the remaining counts.  Ms. Willis was adamant that she was not guilty of anything in the indictment.

> Ms. Willis states that I did not present evidence at trial.  Any evidence that I could legally and hopefully use was presented.  I am of the opinion that I presented some pretty good evidence based upon the fact that the jury was out approximately two (2) days before returning a verdict.

> Ms. Willis states that I failed to question witnesses as requested by her during the course of the trial.  All witnesses were called and questioned.

> Ms. Willis states that I stipulated that she did not reside in Louisiana without her permission.  This matter was discussed with Ms. Willis and she agreed and understood.

> Ms. Willis states that I failed to object to objectionable issues during the course of the trial.  I objected to those issues that were irrelevant, unfavorable, or otherwise detrimental to the guilt or innocence of Ms. Willis.

Doc. No. 8 at 2-3.

In her § 2255 motion, Willis sets forth no specific instances of Smedley's failure to present evidence on her behalf or Smedley's failure to interview and present favorable witnesses or to question witnesses at trial according to her requests. *See* Doc. No. 1 at 4. Nor does Willis, in her § 2255 motion, offer a specific instance of Smedley's failure to object to "objectionable issues." *Id*.

### a.   *Failure to Present Certain Evidence*

Willis is somewhat more specific in the allegations she sets forth in her reply to the government's response to her § 2255 motion, where she suggests, among things, that Smedley ignored her requests to enter the search warrant into evidence, to offer in evidence certain photographs taken at the club where she was alleged to have threatened government witness Valarie Howard, and to subpoena her (Willis's) cell phone records. Doc. No. 12 at 3-5. According to Willis, the search warrant would have proved that law enforcement officers did not confiscate her home computer during a search of her residence, "which would have showed proof that fraudulent [FEMA] claims submitted did not come off my computer." *Id*. at 3. Willis maintains that photographs taken of her at the club on the night she allegedly pulled a gun on Howard and threatened to kill her[10] would have shown that she

---

[10]Howard was a participant and coconsipirator in Willis's scheme to file false claims with FEMA. After Howard was indicted for her part in the conspiracy, she agreed to testify against Willis. The government presented evidence indicating that shortly after learning Howard might testify against her, Willis confronted Howard at the club, waved a gun in her face, and threatened to kill her for testifying.

16

was carrying a purse that evening, which would have supported her claim that Howard provoked the altercation when a male companion of Howard's snatched the purse from her. *Id*. at 4. Willis also claims that the photographs would have shown she was wearing tight-fitting clothing at the club, which she says would have made it difficult for her to conceal a gun on her person. *Id*. Willis maintains that her cell phone records would have supported her claim that a security guard at the club telephoned her after the incident and told her that he had not told FEMA agents he saw her with a gun on the night of the incident. *Id*. at 4-5.

Willis does not demonstrate that Smedley was ineffective for failing to present this evidence, which was either of minimal materiality or cumulative of other evidence that was presented at trial. First, the government did not argue or seek to present evidence at trial that the numerous fraudulent FEMA-aid applications filed by Willis and her coconspirators were filled out on Willis's home computer.[11] Thus, any information (or supposed absence of information) on Willis's home computer would have had limited – if any – probative value. As such, the contents of the search warrant with regard to Willis's home computer were immaterial to her defense.[12] Next, photographic evidence that Willis was carrying a purse

---

[11]The federal agents who executed the search warrant at Willis's residence discovered paperwork related to the fraudulent FEMA applications.

[12]Even so, Smedley was able to use that fact that the home computer was not seized to Willis's advantage, arguing as follows during closing arguments:

> Now if the Government, in the course of their investigation, felt like Ms. Willis had made these application over the Internet or telephone, did they provide you with any telephone records? Did they provide you anything from her computer?
>
> (continued...)

17

and wearing tight clothing on the night she allegedly threatened Howard would have added

little to her defense.  Photographs of Willis with her purse would have been cumulative of

testimony from Willis and from Crystal Washington, who testified that Willis was carrying

a purse on the night of the incident, that Valarie Howard initiated the altercation with Willis,

and that a male companion of Howard's snatched Willis's purse.  Criminal Case No.

2:06cr71-MEF, Doc. No. 237 (Trial Tr.-Vol. III) at 134-38 & 151-52.  "A petitioner cannot

establish ineffective assistance by identifying additional evidence that could have been

presented when that evidence is merely cumulative."  *Marquard v. Sec'y for the Dep't of*

*Corr.*, 429 F.3d 1278, 1308-09 (11th Cir. 2005) (quoting *Van Poyck v. Florida Dep't. of*

*Corrs.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002)).  As for the manner in which Willis was

dressed, Willis herself notes that the club security guard, Lee Williams, testified that he

observed what appeared to be the handle of a gun sticking out of Willis's pants on the night

of the incident.  Doc. No. 12 at 4; *see* Criminal Case No. 2:06cr71-MEF, Doc. No. 236 (Trial

---

[12](...continued)
There was a computer right in her home.  Did they take that computer?  Did they look
into that computer to see if Ms. Willis had actually gone over the Internet to make
any of these applications?  There was no record.  No paper trail in the local office she
had gone in.  So the only other way was over the telephone.  Were there any
telephone records provided to the jury?  No.

So how was it done?  How could she make all of these applications?  There's
three ways you can do it, and they did not provide you not one way on how she did
it.  Not one way did they provide you on how she did it.  Even the top law
enforcement officer in the state – or the United States – and they not provide you any
of that.

Criminal Case No. 2:06cr71-MEF, Doc. No. 238 (Trial Tr.-Vol. IV) at 18-19.

Tr.-Vol. II) at 227 & 231-32. Photographs showing that Willis was wearing tight clothing that made concealment of a gun difficult would actually have tended to support Williams's (inculpatory) testimony that he saw the gun handle protruding from Willis's pants. Finally, assuming that Willis's cell phone records would have, as she claims, indicated that the security guard telephoned her sometime after the incident, the records would have had no value in establishing the contents of any conversation and certainly could not have been used to support Willis's assertion that the security guard told her that he had not told FEMA agents he saw her with a gun on the night of the incident.

Thus, for the reasons set forth above, Willis fails to establish a reasonable probability that presentation of any or all of the evidence she wanted Smedley to present would have affected the outcome of her trial. *See Strickland*, 466 U.S. at 694. Her claim in this regard does not warrant collateral relief.

b.      *Failure to Call Certain Witnesses*

In her reply to the government's response to her § 2255 motion, Willis also asserts that Smedley failed to call two witnesses who she says would have provided exculpatory testimony on her behalf. Doc. No. 12 at 3. According to Willis, she supplied Smedley with the names of Lucy Orum, who she says would have testified that she was present at the club on the night of the incident and that she did not see Willis pull a gun on Valarie Howard, and Mercedes McQueen (Willis's daughter), who Willis says would have testified that Willis's girlfriend, Litasha Washington, had keys to Willis's house and shared a bedroom with Willis,

19

"thus proving that the drugs and firearms found [in Willis's bedroom] could have belonged to another person." *Id*.  However, Willis does not show that Orum and McQueen would indeed have been willing to testify on her behalf or that they would have presented testimony of the sort suggested by Willis.  "[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted).

In any event, testimony from Orum that she did not see Willis with a gun on the night of the incident would have been cumulative of testimony from Crystal Washington, who testified to the same effect.  *See, e.g.,* Criminal Case No. 2:06cr71-MEF, Doc. No. 237 (Trial Tr.-Vol. III) at 138.  Likewise, testimony from McQueen that Litasha Washington had keys to Willis's house and shared a bedroom with Willis would have been cumulative of testimony from Willis and from Litasha Washington herself.  *Id.* (Trial Tr.-Vol. III) at 183-84; Doc. No. 236 (Trial Tr.-Vol. II) at 177-80.  Counsel's failure to present cumulative evidence is not ineffective assistance of counsel.  *See Marquard*, 429 F.3d at 1308-09; *Glock v. Moore*, 195 F.3d 625, 636 (11th Cir. 1999) (finding that, "where much of the new evidence that [petitioner] presents is merely repetitive and cumulative to that which was presented at trial," petitioner could not show prejudice).  Willis is not entitled to relief on this ground.

20

   c.    _Failure to Question Witnesses as Requested_

In her reply to the government's response to her § 2255 motion, Willis also alleges instances of Smedley's refusal to comply with her requests during the trial that Smedley ask certain questions during cross-examination of various government witnesses.  Doc. No. 12 at 4-6.  Willis asserts – without offering the slightest proof – that these witnesses had made prior statements to FEMA agents that were exculpatory as to Willis and were inconsistent with their trial testimony implicating her in the offenses.  Willis's allegations that these witnesses had previously made exculpatory statements is based on little more than her own self-serving speculation.  Willis's counsel cannot be ineffective for failing to pursue a line of questioning for which Willis has shown no basis.

The decision as to how and whether to cross-examine a witness is "a tactical one well within the discretion of a defense attorney."  _Messer v. Kemp_, 760 F.2d 1080, 1090 (11th Cir. 1985).  Smedley cross-examined each and every witness and did not fail to ask relevant questions.  Because Willis does not establish the likely value of questioning the witnesses about their alleged statements to FEMA agents, she fails to show that Smedley was ineffective in this regard.  Absent a showing that such cross-examination was reasonably likely to affect the outcome of her trial, Willis is unable to show prejudice necessary to satisfy the second prong of _Strickland_, 466 U.S. at 687.  Consequently, she is not entitled to any relief based on this claim.

d.   *Stipulation as to Primary Residence*

Willis also contends that Smedley rendered ineffective assistance of counsel by stipulating, without her consent, that her primary residence was in Montgomery, Alabama, and not in Louisiana.  Doc. No. 1 at 4; Doc. No. 12 at 7-8.

Financial assistance to victims of Hurricane Katrina was legally available from FEMA only to those persons whose primary residence[13] was in an area affected by the hurricane. The coastal areas of Louisiana were severely damaged by Hurricane Katrina.  Montgomery, Alabama, however, was not affected by the hurricane, and therefore an individual whose primary residence was in Montgomery was not eligible for federal disaster relief.  The fraudulent applications for FEMA aid that formed the basis of the numerous charges against Willis and her coconspirators all listed the primary residences of the applicants, including Willis, at addresses in Louisiana.  At the beginning of Willis's trial, the jury was informed that the parties had stipulated to a number of factual matters, one of which was that Willis's primary residence was never in the state of Louisiana and had always been in Montgomery Alabama.  Criminal Case No. 2:06cr71-MEF, Doc. No. 235 (Trial Tr.-Vol. I) at 34-35. Willis maintains that Smedley stipulated to this matter without her permission or knowledge.

Willis testified at trial.  During cross-examination by the prosecution, when asked about her stipulations, Willis stated that she did not understand what a stipulation was and

---

[13]At Willis's trial, FEMA employee Donna Hamstead testified that a "primary residence" is defined as the place a person lives for the major part (most of the months) of the calendar year. Criminal Case No. 2:06cr71-MEF, Doc. No. 235 (Trial Tr.-Vol. I) at 39.

maintained that she had not agreed to the stipulations. *Id.*, Doc. No. 237 (Trial Tr.-Vol. III) at 204-08. At that point, a sidebar was held, during which the trial court asked Smedley if she could affirm, as an officer of the court, that she discussed the stipulations with Willis prior to trial. *Id.* at 208-09. Smedley answered in the affirmative and stated that she had discussed the facts contained in the stipulations with Willis, that she had explained the stipulations to Willis "in the simplest terms that I could," and that Willis did not at any time voice any opposition or objections to the contents of any of the stipulations. *Id.* at 209. Smedley informed the court that although she couldn't say with certainty that Willis understood the consequences of the stipulations and that Willis "may not have understood the term 'stipulation,'" she had explained to Willis that

> these are the things that we could not deny. These are things that are actual facts. And that's what I broke it down to her to the simplest terms, not a legal term such as "stipulation."[14]

*Id.* The trial court advised Smedley that it was concerned Willis was in danger of perjuring herself by giving testimony that was contrary to the stipulated facts. *Id.* at 210. The court then allowed Smedley an opportunity to talk with Willis about the matters discussed during the sidebar. *Id.* at 211. After Smedley conferred with Willis off the record and out of the

---

[14]In a second affidavit filed with this court, Smedley states:

Before we had the sidebar, I discussed with Ms. Willis the proposed stipulations. After asking her if she had any questions, she stated to me that she understood and agreed to them. I took her word that she understood our conversation.

Doc. No. 19 at 1.

hearing of the other courtroom participants, Smedley stated in open court – and in Willis's presence – that she would like the record to reflect that she had again gone over the stipulations, "one by one," with Willis.  *Id.*

On this record, the undersigned finds that Willis is not now in a position to insist, plausibly, that the stipulations in her case were entered without her knowledge and permission.  Moreover, Willis cannot show any prejudice in this regard.  There was overwhelming evidence, through the testimony of numerous government witnesses, that Willis's primary residence was in Montgomery, Alabama, and not in Louisiana.  Willis has not pointed to any facts tending to prove a claim that her primary residence was ever in Louisiana.  Even when attempting to disavow her stipulation during cross-examination at trial, Willis ultimately acknowledged that her primary residence was in Montgomery.  The following back-and-forth occurred during the cross-examination of Willis:

> [PROSECUTOR]: Okay.  I guess I want to start with some easy questions.  Things that you and I can probably agree about.

> [WILLIS]:  Okay.

> [PROSECUTOR]:  You agree that your primary residence was never in Louisiana, correct?

> [WILLIS]:  What I agree then –

> [PROSECUTOR]:  The stipulation that you entered into?

> [WILLIS]:  No, I did not.  What you said?  Repeat your question again so I can understand.

> [PROSECUTOR]: You agree that your primary residence was never in

24

the state of Louisiana?

[WILLIS]:  Yeah.  What I agreed to, can I state that for you?

[PROSECUTOR]:  I'm asking you – The question I asked you was, whether or not your primary residence was in the state of Louisiana.  It's a stipulation that you've entered into.

[WILLIS]:  I told y'all I had a residence in Louisiana, yes, I did.

[PROSECUTOR]:  You understand the difference between having one residence and two residences, do you not?

[WILLIS]:  Yes.

[PROSECUTOR]:  Okay.  So your primary residence is not in the state of Louisiana, correct?  I'm asking you about a stipulation that you've entered into that is evidence in this case.  It's a very simple question, ma'am.

[WILLIS]:  I understand what you're saying.

[PROSECUTOR]:  Okay.

[WILLIS]:   But I'm saying your question, I told you I live in Montgomery, I lived in Louisiana.  Back and forth.  I told you that.

[PROSECUTOR]:  Okay.  Let me just ask you one more time.  Was – you agree that your primary residence, the place where you spend the majority of your time during any given year, was never in the state of Louisiana?

[WILLIS]:  It wasn't.

[PROSECUTOR]:  Thank you.

And you would also agree that your primary residence was here in Montgomery, Alabama.

[WILLIS]:  Yes, this is where I spent most of my time, Montgomery.

Criminal Case No. 2:06cr71-MEF, Doc. No. 237 (Trial Tr.-Vol. III) at 203-05.

Furthermore, the stipulation regarding Willis's primary residence was not inconsistent with the defense's strategy.  Perhaps recognizing that – even without a stipulation – the facts were against her and any argument that Willis's primary residence was in Louisiana was a losing proposition, Smedley chose to focus on Willis's *understanding* of what constituted a primary residence and whether Willis believed in good faith that she qualified for FEMA aid.  During closing arguments Smedley reminded jurors that Willis had testified she was attempting to establish a residence in Louisiana prior to Hurricane Katrina and that, to that end, she had taken furniture and clothing to Louisiana and "was going down there on a regular basis."  *Id.*, Doc. No. 238 (Trial Tr.-Vol. IV) at 17.  Smedley then argued:

> Now the Government is harping on this issue that you can only apply for your primary residence.  Who knew what the primary residence was?  Did she know?  No, she didn't know.  Did anybody else know?  No.  Well you heard some of the other codefendants tell you they had never gone to Louisiana, so they knew they were not entitled.
>
> They knew they had never set foot in Louisiana for anything.  Never took a stitch of furniture, clothes, anything to Louisiana.  But Ms. Willis had taken some things.  She knew she had a loss in Louisiana.  She said she left with the things on her back, a couple of other clothes and she left everything elimination [sic].  She heard Hurricane Katrina was coming.  Just like everybody else in that area, they were leaving.
>
> If my memory serves me right, you haven't heard anybody take the stand who said they knew for a fact or saw Ms. Willis making an application.  As a matter of fact, Ms. Willis didn't even make her own application.  Someone made an application for her because she felt she had a loss in Louisiana.  She had left those things down there, and she felt that she was entitled.

*Id.* at 17-18.

Another apparent aspect of Smedley's strategy at trial was to suggest to the jury that Willis had no prior knowledge of most of the numerous fraudulent FEMA applications that formed the basis of the charges against her, that persons other than Willis filed fraudulent applications without her knowledge or participation, that Willis was not the ringleader of a conspiracy to defraud the government, and that indeed no such conspiracy existed.  *See, e.g.*, *id.*, Doc. No. 235 (Trial Tr.-Vol. I) at 30-32.  Given the nature of the evidence, Smedley's decisions to emphasize Willis's good faith belief that she qualified for FEMA aid and to argue that Willis was unaware of most of the fraudulent aid applications that were filed – rather than to argue, against the evidence, that Willis's primary residence was in fact in Louisiana – were part of a reasonable trial strategy.

For the reasons noted above, the court finds that Willis is not entitled to any relief based on her claim that Smedley rendered ineffective assistance of counsel by stipulating, without Willis's consent, that Willis's primary residence was in Montgomery, Alabama, not in Louisiana.

In her motion to amend her § 2255 motion, Willis says she also did not agree to the stipulation that she had possession of the firearms found in her bedroom during a search of her residence.  Doc. No. 14 at 2.  Because Willis insisted during her trial testimony that she did not agree to this stipulation and maintained the guns were not hers, the trial court, in its jury charge, instructed jurors that Willis was now disputing this stipulation and that the jury should decide whether the fact of gun possession had been proved based on the trial

evidence, the credibility of witnesses, and the court's instructions.  Criminal Case No. 2:06cr71-MEF, Doc. No. 237 (Trial Tr.-Vol. III) at 207-09; Doc. No. 238 (Trial Tr.-Vol. IV) at 63.  The guns formed the basis of the count of the indictment (Count 25) charging Willis with possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  There was no stipulation by the defense that the drugs in question were Willis's, and part of the defense's strategy was to suggest that persons other than Willis, and in particular Litasha Washington, had free access to Willis's rooms.  During her closing arguments, Smedley also suggested to jurors that there was a credibility issue as to whether the officers who searched Willis's residence testified truthfully when they stated they had discovered the guns, together with a substantial amount of packaged marijuana, in Willis's bedroom.  *Id*., Doc. No. 238 (Trial Tr.-Vol. IV) at 81-84.  Through its witnesses at trial, the government presented substantial evidence to establish that the guns were in Willis's possession.  Willis does not demonstrate that she was prejudiced by the actions of Smedley with regard to this stipulation.  Therefore, she is not entitled to relief based on a claim that Smedley rendered ineffective assistance of counsel in this regard.

### e.     *Failure to Object to "Objectionable Issues"*

Willis asserts that Smedley rendered ineffective assistance of counsel at trial by failing to object to "objectionable issues."  Doc. No. 1 at 4.  Nowhere in her pleadings does Willis offer a specific example of an "objectionable issue" falling under this claim.  Her cursory allegations doe not entitle to her collateral relief on this claim.

**5.    Smedley's Failure to Move for Disqualification of AUSA Redmond**

Willis contends that Smedley should have moved to disqualify Assistant United States Attorney ("AUSA") Susan Redmond from the case because Redmond was formerly the prosecutor in a state criminal case, where Willis was the victim, that was dismissed by the trial court after Willis failed to appear for court.  Doc. No. 14 at 2.  Willis maintains that Redmond thereafter had a personal grudge against her that caused her to be "hostile" during plea negotiations in the instant case, during which Redmond allegedly told Willis that "she would make sure she spent a long, long time in prison."  *Id*.

Willis's allegations fail to raise a credible claim of prosecutorial misconduct, conflict of interest, or improper bias on Redmond's part.  The decision to dismiss the state case where Willis failed to appear was made by the trial court in that case and not the prosecutor.  In any event, dismissal based on Willis's failure to appear does not in itself demonstrate an improper personal bias.  As for Redmond's alleged statement to Willis during plea negotiations, if a prosecutor believes that a charged defendant has committed crimes and the defendant faces a long sentence if convicted (as was certainly true in Willis's case), it does not demonstrate personal bias for that prosecutor to inform the defendant in no uncertain terms that she will be brought to justice with respect to the crimes with which she is charged.

The disqualification of government counsel is a "drastic measure and a court should hesitate to impose it except where necessary."  *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (citing *Bullock v. Carver*, 910 F.Supp. 551, 559 (D. Utah 1995)).

Accordingly, courts have allowed disqualification of government counsel only in limited circumstances. *See, e.g., Young v. United States*, 481 U.S. 787, 807 (1987) (actual conflict of interest because appointed prosecutor also represented another party); *United States v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981) (bona fide allegations of bad faith performance of official duties by government counsel in a civil case); *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985) (prosecutor who will act as a witness at trial).

Willis does not demonstrate a basis for disqualification of AUSA Redmond from her case. Therefore, it was not ineffective assistance of counsel for Smedley to fail to move for Redmond's disqualification. *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to argue a meritless issue); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (same). Willis is not entitled to any relief based on this claim.

### D.   Willis's Claims Against Halstrom

### 1.   Halstrom's Failure to Object to Denial of Smedley's Motion to Withdraw as Trial Counsel

Willis contends that attorney Timothy C. Halstrom – who, as noted above, was originally appointed to represent Willis in July 2006 pursuant to the CJA, but who was allowed to withdraw her as counsel on January 11, 2007, after Willis retained the services of Smedley – rendered ineffective assistance of counsel when he failed to object to the court's January 24, 2007, order denying Smedley's motion to withdraw as Willis's trial

counsel.[15]  Doc. No. 1 at 5.

The government correctly observes that when Smedley moved to withdraw as Willis's counsel, Halstrom was no longer Willis's attorney.  Doc. No. 10 at 16.  Therefore, Halstrom could not be guilty of ineffective assistance of counsel for failing to object to the court's denial of Smedley's motion to withdraw.  *Id.*  Furthermore, even after he was no longer Willis's counsel, Halstrom contacted the court and indicated he was willing to accept reappointment as Willis's counsel if the court saw fit.  Doc. No. 9 at 3-4.  However, the court had denied Smedley's motion to withdraw as counsel and had directed her to proceed as Willis's attorney.  Finally, Willis fails to establish any prejudice in this regard.[16]

For the reasons indicated above, Willis is not entitled to collateral relief based on this allegation of ineffective assistance of counsel on the part of Halstrom.

## 2.    Halstrom's Failure to Recognize Willis's "Diminished Capacity"

Willis maintains that Halstrom provided ineffective assistance of counsel when he failed to recognize Willis's diminished capacity "until it was too late in the proceedings."  Doc. No. 1 at 5.  In this regard, Willis states that soon after Halstrom's original appointment,

---

[15]Following the trial, Halstrom was reappointed as counsel for Willis.  He then represented Willis at sentencing and on direct appeal.

[16]Although Halstrom indicates in his affidavit that he regrets not having sought more vigorously before trial to be reappointed as Willis's counsel and suggests that he believes the "positive rapport" he had already established with Willis may have led Willis, ultimately, to heed his advice and accept a plea offer from the government, his belief in this regard is speculative and may not be altogether warranted, given his difficulties with Willis when he represented her and Willis's evident unwillingness to accept advice from her attorneys.  *See* Doc. No. 9 at 4.

Halstrom notified the court that Willis did not require a mental evaluation, but later in the proceedings, after Halstrom was reappointed as her counsel – i.e., following trial and prior to sentencing – Halstrom filed a motion for her mental evaluation. *Id.* Willis appears to suggest that Halstrom's failure to ask for a mental evaluation prior to her trial cost her the opportunity to present a "diminished capacity" defense.

The record reflects that after he was reappointed as Willis's counsel, Halstrom requested that Willis receive an inpatient psychiatric evaluation by the Federal Bureau of Prisons in anticipation of a possible competency hearing.[17] *See* Criminal Case No. 2:06cr71-MEF, Doc. No. 254. The motion for psychiatric evaluation was granted. *Id.*, Doc. No. 258. The report summarizing the results of the psychiatric evaluation concluded that Willis "[did] not suffer from a severe mental disorder or defect that would preclude her ability to understand the nature and consequence of the proceedings against her, or to assist her attorney in her own defense." *Id.*, Doc. No. 271 at 1. The report further indicated that intelligence testing conducted as part of the evaluation reflected that Willis had a Full Scale IQ of 62, which, "if taken at face value," corresponded to Mild Mental Retardation. *Id.* at 9. However, the report stated that there were "indications that suggest the current results may not be an accurate representation of the defendant's true level of cognitive functioning," that Willis "displayed inconsistent effort on cognitive measures during the present evaluation," and that Willis's performance during various aspects of testing were "characteristic of

---

[17]Halstrom indicates that a purpose for seeking the evaluation was to provide information upon which he could argue for a variance at Willis's sentencing. Doc. No. 9 at 5.

individuals who are feigning a mental disorder and are rarely seen in clients responding truthfully." *Id*. at 11-12.   The report concluded that Willis was likely "malingering psychiatric symptoms in an effort to receive reduced or no legal repercussions for her criminal behavior." *Id*. at 12.   Because Willis appeared to be malingering, the report stated that "a diagnosis of Mental Retardation was considered, but not assigned" to Willis.  *Id*.

Halstrom states that during his pretrial representation of Willis (before Smedley was retained as counsel), he "personally found Ms. Willis to be coherent, understanding of the charges in the indictment, capable of recounting her participation (or lack thereof) concerning the facts surrounding the indictment, and helpful in providing information assisting in her defense.  Doc. No. 9 at 5.   According to Halstrom, "Ms. Willis was particularly concerned over the fact that a mental evaluation would be conducted in Florida and she would be incarcerated for several months." *Id*.  Therefore, "[i]t was determined that we would not seek a mental evaluation." *Id*.

"Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)).   To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998)

(quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)).  "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'"  *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106).  In order to actually prevail on such a claim, the petitioner must prove by a preponderance of the evidence that she was in fact incompetent to stand trial.  *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298-99; *Medina*, 59 F.3d at 1106.  In order to prevail on a claim of mental incompetency *at the time of the offense* – i.e., a defense of insanity – a defendant is required to prove by clear and convincing evidence that "as a result of a severe mental disease of defect, [he] was unable to appreciate the nature and quality or the wrongfulness of his acts."  *See* 18 U.S.C. § 17.  Willis fails to present this court with facts that positively, unequivocally, and clearly generate a legitimate doubt about her competency to assist in her defense and stand trial.[18]  Further, she has presented no facts to support the suggestion that she was mentally incompetent – i.e., legally insane – at the time of the offense.

As the government observes in its response to Willis's § 2255 motion:

> With the passage of the Insanity Defense Reform Act of 1984, Congress eliminated "any form of legal excuse based upon ... diminished ability or failure to reflect adequately upon the consequences or nature of one's actions."  By so doing, "Congress 'intended to insure that the insanity defense is not improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a "diminished responsibility" or some similarly

---

[18]For this reason, Willis is not entitled to any relief based on a claim that Halstrom was ineffective for failing to argue, while he was her counsel, that she was not competent to stand trial.  *See* Doc. No. 13 at 1-2.  Likewise, trial counsel Valerie Smedley cannot be deemed to have rendered ineffective assistance for failing to assert that Willis was not competent to stand trial.  *See* Doc. No. 26 at 2.

assert[ed] state of mind which would serve to excuse the offense.'"  In sum, Congress, "eliminated all other *affirmative defenses or excuses* based upon mental disease or defect" other than insanity.

Doc. No. 10 at 18 (footnotes omitted) (citing *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990)).  Thus, despite Willis's suggestion that she was deprived of a chance to present a "diminished capacity" defense at trial, such a defense was not legally available to her.  As such, Halstrom did not render ineffective assistance of counsel by failing to "recognize" Willis's diminished capacity" prior to trial.[19]

The time and place for Halstrom to present "diminished capacity" evidence on Willis's behalf was at sentencing.  To be eligible for consideration of a downward departure based on diminished mental capacity, a defendant must demonstrate, *inter alia*, "that his reduced mental capacity 'contributed' to the commission of the crime."  *See United States v. Ruff*, 998 F.Supp. 1351, 1361 (M.D. Ala. 1998); U.S.S.G. § 5K2.13.  A departure based on diminished mental capacity "'requires a showing that the defendant's reduced mental capacity contributed to the commission of the offense; such a link cannot be assumed.'" *Ruff*, 998 F.Supp at 1361 (quoting *United States v. Frazier*, 979 F.2d 1227, 1230 (7th Cir. 1992)). A "departure is warranted if the defendant's reduced mental capacity prevents the defendant from appreciating the wrongfulness of the offense, or if the defendant understands the wrongfulness of the act, but the reduced mental capacity renders the defendant unable to control the offensive conduct."  *Ruff*, 998 F.Supp. at 1361.  Prior to sentencing, Halstrom

---

[19]Nor, for that matter, could trial counsel Smedley be deemed to have rendered ineffective assistance by failing to assert a "diminished capacity" defense on Willis's behalf.

sought and obtained a mental evaluation of Willis.  He then presented "diminished capacity" evidence on her behalf in an effort to obtain a reduced sentence.[20]  Willis is not entitled to any relief based on this claim.

### 3.    Halstrom's Allegedly Deficient Performance on Appeal

Willis contends that Halstrom was ineffective for failing to present the following claims on appeal:  (1) that the district court erred in its calculation of the intended loss from Willis's offense; (2) that the order of the firearm counts was incorrectly listed in the PSI; (3) that there was insufficient evidence to sustain Willis's conviction for possessing a firearm in furtherance of a drug trafficking crime; and (4) that the Probation Office failed to prepare a sentencing guidelines calculation to assist counsel in efforts to advise Willis of her sentencing exposure.  Doc. No. 14 at 1-2.  These claims, none of which entitles Willis to relief, are discussed below.

#### a.    *Failure to Challenge Loss Calculation*

There is no legal or factual basis for Willis's allegation that Halstrom was ineffective for failing to argue on appeal that the district court erred in calculating the intended loss from Willis's offense.  *See* Doc. No. 14 at 1-2.  Halstrom raised this very claim at sentencing and then pursued the claim on direct appeal, where the Eleventh Circuit held there was  no error in the district court's calculation of loss.  *See United States v. Willis*, 560 F.3d 1246 (11th Cir. 2009).

---

[20]The district court denied Halstrom's motion seeking a sentencing variance based on Willis's diminished capacity.  *See* Criminal Case No. 2:06cr71-MEF, Doc. No. 294.

       b.      <u>*Failure to Challenge Order of Firearm Counts in*</u>
               <u>*PSI*</u>

Willis argues that Halstrom's failure to appeal the chronological listing of the two 18 U.S.C. § 924(c) firearm counts in her PSI resulted in her receiving a lengthier sentence (by two years) than she otherwise would have received.  Doc. No. 14 at 1.  With regard to this claim, Halstrom states:

> This issue was raised at Petitioner's sentencing hearing.  Petitioner was found guilty on two separate counts relating to the illegal possession of firearms, each count alleging illegal conduct on separate dates and under separate circumstances and with respect to different and distinct violations of law.  The order in which the court considered the two counts was significant in that whichever count was considered first would vary the sentence by two years.  If the first incident to be considered involved the "brandishing" of the gun, a term of seven years imprisonment was to be applied; whereas if it were the mere illegal possession of a firearm, a term of five years would be applied.  When considering the second count, a term of 25 years consecutive to the sentence imposed for the first offense would be applied regardless of whether or not the gun was brandished.  The objection was considered by the court as interesting or unique, but nonetheless, denied.

> Unfortunately for Petitioner, the brandishing of the firearm occurred in time prior to the mere possession of the firearm found during the search of her home.  The Court held that there was no obligation on the part of the preparer of the pre-sentence investigation report to list the firearm possession counts in a manner favorable to the defendant.  The Court found (and, I add, logically) it to be proper for the probation officer to list the counts in order of their chronological occurrence.

> I searched in vain both prior to the sentencing hearing and in preparation for Petitioner's appeal for any legal support for the argument presented to the Court.  Again, in the Eleventh Circuit, initial briefs are limited in length.  On appeal (with the exception of a brief pursuant to *Anders v. California*) it is my practice to present the issues most likely to be received favorably by the appellate court and to exclude issues I believe to be without merit.

Doc. No. 18 at 3-4; *see also* Criminal Case No. 2:06cr71-MEF, Doc. No. 294 at 25-30.

The two § 924(c) firearm counts were listed in Willis's PSI in the same order that (1) the underlying offenses actually occurred, (2) the two offenses were charged in the indictment, and (3) the offenses were decided by the jury.[21]  Willis provides no legal support for her argument that the counts should have been listed in a way that would have produced a shorter sentence.  Because she demonstrates neither deficient performance by Halstrom nor any resulting prejudice, she is not entitled to collateral relief on her claim that Halstrom was ineffective for failing to pursue this issue on appeal.

      *c.*    <u>Failure to Challenge Sufficiency of Evidence as to</u>
           <u>§ 924(c) Count (Count 25)</u>

Willis contends that Halstrom was ineffective for failing to argue on appeal that the evidence was insufficient to sustain her § 924(c) conviction for possessing a firearm in furtherance of a drug trafficking crime.  Doc. No. 14 at 1.

There are two different ways to violate 18 U.S.C. § 924(c)(1):  the statute makes it an

---

[21]Section 924(c)(1)(C)(i) provides for a mandatory consecutive 25-year minimum sentence for a "second or subsequent" § 924(c) conviction.  In *Deal v. United States*, 508 U.S. 129, 139-40 (1993), the United States Supreme Court held  that "second or subsequent conviction" within the meaning of the statute means a finding of guilt, rather than the entry of a final judgment of conviction, and that a first sentence does not have to become final prior to a second one in order for the second one to count as a "second or subsequent offense."  In *Deal*, the defendant had committed six different armed robberies on six different dates and was charged with all of those crimes at the same time.  The Supreme Court reasoned that "simply because [the defendant] managed to evade detection, prosecution, and conviction for the first five offenses and was ultimately tried for all six in a single proceeding" did not mean that the enhanced sentence was "'glaringly unjust.'" 508 U.S. at 137.  Here, Willis's two convictions for violating § 924(c) constituted separate "findings of guilt," and thus the conviction for one of the two § 924(c) counts was a first conviction and the conviction for the other count was a "second or subsequent" conviction for purposes of § 924(c)(1)(C)(i).

offense to **either** (1) use or carry a firearm during and in relation to a crime of violence or drug trafficking crime **or** (2) possess a firearm in furtherance of such crime. *See, e.g., United States v. Timmons*, 283 F.3d 1246, 1250-53 (11th Cir. 2002); *United States v. Daniel*, 173 Fed.Appx. 766, 770 (11th Cir. Mar. 23, 2006) ("Thus, there are two separate ways to violate the statute: to use or carry a firearm during and in relation to a drug trafficking crime or to possess a firearm in furtherance of a drug trafficking crime.").  Count 25 of the indictment in Willis's case charged, in pertinent part, that Willis "used and carried firearms during and in relation to, and possessed firearms in furtherance of, a drug trafficking crime for which she may be prosecuted in a Court of the United States, to wit: possession with intent to distribute marijuana...."  *See* Criminal Case No. 2:06cr71-MEF, Doc. No. 220 at 15.

The government presented ample evidence at trial by which the jury could find Willis was guilty of possessing a firearm in furtherance of a drug trafficking crime.  That evidence showed that when executing a search warrant at Willis's residence, federal agents found two loaded handguns in her bedroom within feet of marijuana that was packaged for distribution. *See, e.g., id.*, Doc. No. 237 at 40-52.  Agents also found $1,000 in currency on the shelf of a closet in the bedroom.  *Id*.  To establish that a firearm was possessed "in furtherance of" a drug trafficking crime, the government must show "'some nexus between the firearm and the drug selling operation.'"  *Timmons*, 283 F.3d at 1253 (quoting *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001)).  "The nexus between the gun and the drug operation can be established by '... accessibility of the firearm,... proximity to the drugs or drug profits, and

the time and circumstances under which the gun is found.'" *Id*. (quoting *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000)).  The proximity of the guns to the drugs found in Willis's bedroom established a nexus sufficient to prove a violation of § 924(c).  Willis cannot demonstrate deficient performance or resulting prejudice from Halstrom's failure to challenge the sufficiency of the evidence as to this offense on appeal.  Therefore, Willis is not entitled to collateral relief based on her claim that Halstrom rendered ineffective assistance of counsel in this regard.[22]

>            d.     *Failure to Seek Pretrial Guidelines Calculation*
>                   *from Probation Office*

Willis contends that Halstrom was ineffective for failing to appeal the Probation Office's "failure to comply with the Court's Order" to prepare a pretrial sentencing guidelines calculation "to assist counsel in his efforts to better advise Petitioner of  her estimated sentencing exposure." Doc. No. 14 at 1.  Although Halstrom did file a request for such information during his pretrial representation of Willis, the court entered no such order to this effect (i.e., an order directing the Probation Office to prepare a pretrial guidelines estimate). *See* Doc. No. 18 at 4-5.  As the government notes, there is no Rule of Criminal Procedure, constitutional authority, or statutory requiring the Probation Officer to prepare such an estimate.  Doc. No. 21 at 5.  Consequently, the was no basis for Halstrom to appeal the Probation Office's failure to prepare a pretrial guidelines estimate.  Moreover, Willis fails

---

[22]For the same reasons, Willis is not entitled to relief on any claim that her trial counsel, Smedley, was ineffective for failing to move for a judgment of acquittal on this ground. *See* Doc. No. 12 at 8.

to establish how she was prejudiced in this regard.  As such, she is not entitled to collateral relief based on this allegation of ineffective assistance of counsel.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Willis be denied with prejudice, as the claims raised by her entitle her to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **March 30, 2012.** A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 16th day of March, 2012.

      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

41